# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Board of Education of the Highland Local School District, | |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| vs. | Case No: 2:16-cv-524 |
| United States Department of Education; John B. King, Jr., in his official capacity as United States Secretary of Education; United States Department of Justice; Loretta E. Lynch, in her official capacity as United States Attorney General; and Vanita Gupta, in her official capacity as Principal Deputy Assistant Attorney General, | Judge Algenon L. Marbley<br>Magistrate Judge Kimberly A. Jolson |
| Defendants. | |

Jane Doe, a minor, by and through her legal guardians Joyce and John Doe,

      Intervenor Third-Party Plaintiffs,

  vs.

Board of Education of the Highland Local School District; Highland Local School District; William Dodds, Superintendent of Highland Local School District; and Shawn Winkelfoos, Principal of Highland Elementary School,

      Third-Party Defendants.

---

## Reply in Support of Plaintiff's Motion for Preliminary Injunction

---

James A. Campbell, OH Bar No. 0081501
   *Trial Attorney*
Kenneth J. Connelly, AZ Bar No. 025420*
Jeana Hallock, AZ Bar No. 032678*

Andrew J. Burton, OH Bar No. 0083178
RENWICK, WELSH & BURTON LLC
9 North Mulberry Street
Mansfield, Ohio 44902

ALLIANCE DEFENDING FREEDOM
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jcampbell@ADFlegal.org
kconnelly@ADFlegal.org
jhallock@ADFlegal.org

(419) 522-2889
(419) 525-4666 Fax
andrew@rwblawoffice.com

J. Matthew Sharp, GA Bar No. 607842*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 Fax
msharp@ADFlegal.org

*Counsel for Plaintiff*
*Admitted Pro Hac Vice*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ii

Introduction ...................................................................................................................1

I.    Highland is likely to succeed on the merits. ......................................................... **2**

    A.    This Court has jurisdiction over Highland's complaint. ..........................2

    B.    Defendants' rule is final agency action. .................................................6

    C.    Highland does not have an adequate remedy outside of the APA. ..................10

    D.    Defendants' rule is not entitled to deference. ........................................11

    E.    Defendants' actions violate the Constitution. .......................................14

        1.    Defendants' rule violates the Spending Clause's notice requirement. ..............................................................................14

        2.    Defendants' rule unlawfully seeks to coerce Highland to adopt policies in violation of the Spending Clause. ...........................16

        3.    Section 5 of the Fourteenth Amendment does not provide an independent constitutional basis for Title IX's enactment. ..................17

        4.    Defendants' rule forces Highland to violate its students' constitutional rights of bodily privacy. ......................................18

II.    Highland will suffer irreparable harm absent a preliminary injunction, and the balance of equities and public interest weigh in Highland's favor. ...............................19

Conclusion ....................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*American Tort Reform Association v. OSHA,*
738 F.3d 387 (D.C. Cir. 2013) ................................................................................8, 9

*Appalachian Power Co. v. Environmental Protection Agency,*
208 F.3d 1015 (D.C. Cir. 2000) ...............................................................................9

*Auer v. Robbins,*
519 U.S. 452 (1997).................................................................................... 11, 12, 14

*Bennett v. Kentucky Department of Education,*
470 U.S. 656 (1985)..................................................................................... 15, 16

*Bennett v. Spear,*
520 U.S. 154 (1997)........................................................................................6

*Bethel School District No. 403 v. Fraser,*
478 U.S. 675 (1986)......................................................................................18

*Brannum v. Overton County School Board,*
516 F.3d 489 (6th Cir. 2008).........................................................................18

*Cannon v. University of Chicago,*
441 U.S. 677 (1979) .......................................................................................4

*Charles C. Steward Mach. Co. v. Davis,*
301 U.S. 548 (1937)......................................................................................16

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984)......................................................................................11

*Christopher v. SmithKline Beecham Corp.,*
132 S. Ct. 2156 (2012) ......................................................................... 6, 7, 14

*City of Boerne v. Flores,*
521 U.S. 507 (1997)......................................................................................17

*Davis Next Friend LaShonda D. v. Monroe County Board of Education,*
526 U.S. 629 (1999)......................................................................................15

*Dyer v. Secretary of Health & Human Services,*
889 F.2d 682 (6th Cir. 1989)..........................................................................9

*First National Bank of Lexington, Tennessee v. Sanders,*
    946 F.2d 1185 (6th Cir. 1991) ................................................................8, 9

*Franklin Federal Savings Bank v. Director, Office of Thrift Supervision,*
    927 F.2d 1332 (6th Cir. 1991) .................................................................. 8

*Franks v. Kentucky School for the Deaf,*
    142 F.3d 360 (6th Cir. 1998)....................................................................17

*Free Enterprise Fund v. Public Co. Accounting Oversight Board,*
    561 U.S. 477 (2010)..............................................................................4, 5

*G.G. v. Gloucester County School Board,*
    822 F. 3d 709 (4th Cir. 2016) ........................................................... 13, 14

*Gloucester County School Board v. G.G.,*
    136 S. Ct. 2442 (2016) ......................................................................1, 13

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991)................................................................................17

*Haines v. Federal Motor Carrier Safety Administration,*
    814 F.3d 417 (6th Cir. 2016)....................................................................10

*Hollingsworth v. Perry,*
    558 U.S. 183 (2010)......................................................................... 14, 20

*Independent Bankers Association of America v. Smith,*
    534 F.2d 921 (D.C. Cir. 1976) ..............................................................8, 9

*Ironridge Global IV, Ltd. v. Securities & Exchange Commission,*
    146 F. Supp. 3d 1294 (N.D. Ga. 2015) ....................................................19

*Kentucky Waterways Alliance v. Johnson,*
    540 F.3d 466 (6th Cir. 2008).............................................................. 11, 14

*Marlow v. U.S. Department of Education,*
    820 F.2d 581 (2d Cir. 1987) ..................................................................... 3

*National Automatic Laundry & Cleaning Council v. Shultz,*
    443 F.2d 689 (D.C. Cir. 1971) ................................................................. 9

*National Federation of Independent Business v. Sebelius,*
    132 S. Ct. 2566 (2012) ..................................................................... 16, 17

*Ohio Coal Association v. Perez,*
    -- F.Supp.3d --, No. 2:14-CV-2646, 2016 WL 3350466
    (S.D. Ohio June 16, 2016)................................................................................4, 5

*Oncale v. Sundowner Offshore Services, Inc.,*
    523 U.S. 75 (1998)..............................................................................................13

*Pennhurst State School & Hospital v. Halderman,*
    451 U.S. 1 (1981)................................................................................................17

*Rhea Lana, Inc. v. Department of Labor,*
    -- F.3d --, 2016 WL 3125035 (D.C. Cir. June 3, 2016)......................................7

*Romeo Community School v. U.S. Department of Health, Education, & Welfare,*
    438 F. Supp. 1021 (E.D. Mich. 1977) .............................................................5, 6

*Sackett v. EPA,*
    132 S. Ct. 1367 (2012) ........................................................................................5

*School District of City of Pontiac v. Secretary of U.S. Department of Education,*
    584 F.3d 253 (6th Cir. 2009) ...........................................................1, 2, 14, 15

*Sebelius v. Cloer,*
    133 S. Ct. 1886 (2013) ......................................................................................11

*Smith v. City of Salem,*
    378 F.3d 566 (6th Cir. 2004)........................................................................12, 13

*Smith v. City of Salem,*
    369 F.3d 912 (6th Cir. 2004)..............................................................................12

*South Dakota v. Dole,*
    483 U.S. 203 (1987)............................................................................................16

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994)....................................................................................2, 3, 4, 5

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)............................................................................................18

## Statutes & Regulations

5 U.S.C. § 551.....................................................................................................................3

5 U.S.C. § 704.....................................................................................................................3

5 U.S.C. § 706 ..................................................................................................2

20 U.S.C. § 1234g ...........................................................................................10

20 U.S.C. § 1682 ..............................................................................................3

20 U.S.C. § 1683 ..............................................................................................3

20 U.S.C. § 1686 ........................................................................................6, 15

34 C.F.R. § 106.32 .....................................................................................6, 15

34 C.F.R. § 106.33 ...............................................................................6, 13, 15

42 U.S.C. § 2000d-7 ......................................................................................17

**Other Authorities**

Petitioner's Application for Recall and Stay of the U.S. Fourth Circuit's Mandate
    Pending Petition for Certiorari at 33-36, *Gloucester Cty. Sch. Bd. v. G.G.*, 136 S.
    Ct. 2442 (Aug. 3, 2016) (No. 16A52), available at http://bit.ly/2beKxGn .................20

**INTRODUCTION**

Earlier this month, the Supreme Court stayed a preliminary injunction issued to a student who sought to access school restrooms designated for the opposite sex. *See Gloucester Cty. Sch. Bd. v. G.G.*, 136 S. Ct. 2442 (2016). By taking this extraordinary step, the high court sent a clear message to all lower courts that they should allow schools to maintain their sex-based restroom-access policies and must not force them to implement gender-identity-based policies. More recently, a federal district court in Texas preliminarily enjoined the same agency rule that Highland challenges here. *See Texas v. United States*, No. 7:16-cv-00054-O, Preliminary Injunction Order (N.D. Tex. Aug. 21, 2016) (ECF No. 58) (hereinafter "*Texas*, Order") (Ex. 13). The court there concluded that Defendants' rule violates the Administrative Procedure Act (APA), that the states and school districts that brought the suit faced a threat of irreparable harm, and that the public interest supported an injunction against the federal government's overreach. *Id.* at 21-36. For the same reasons, this Court should also enjoin Defendants from enforcing that rule against Highland.

Defendants' arguments aid this Court in reaching that conclusion by showing that Highland must prevail on either its APA claim or its Spending Clause claim. If, as Highland argues, the term "sex" in Title IX is clear and capable of only one meaning, Highland is likely to succeed under the APA because Defendants have exceeded their authority by redefining an unambiguous statutory term. *See id.* at 27-33. But if, as Defendants suggest, the term "sex" in Title IX " is unclear," and if this Court were to find that Highland's and Defendants' interpretations "are all plausible," then Highland is likely to succeed under the Spending Clause because Defendants' unlawful rule "does not provide clear notice." *Sch.*

*Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 277 (6th Cir. 2009) (divided en banc) (opinion of Cole, J., with six other Judges). Either way, Defendants' rule is "unenforceable," and Highland is likely to prevail. *Id.* at 276; *see* 5 U.S.C. § 706(2).

Despite this, Defendants urge this Court to stay its hand, arguing that their rule is not final agency action and that it is not legislative because the rule merely reflects their opinion about what Title IX means and does not determine rights and obligations. Defendants implausibly maintain these arguments while simultaneously threatening an impending enforcement action against Highland based on the very rule at issue here. But they cannot have it both ways: either their rule establishes new obligations that they can enforce (in which case Highland can challenge it); or their rule does not have legal consequences that can be enforced (in which case they must desist from their enforcement threats). Given that Defendants insist on pursuing their enforcement efforts, they have left no doubt that the rule is legislative and that it is final agency action subject to judicial review. As a result, because Defendants admittedly have not complied with the notice-and-comment rulemaking requirements, this Court should conclude that Defendants have violated the APA.

## ARGUMENT

**I.     Highland is likely to succeed on the merits.**

### A.     This Court has jurisdiction over Highland's complaint.

Defendants unpersuasively rely on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to argue that this Court lacks jurisdiction over Highland's claims. *See* Defs.' Opp. at 10-12. The Court in *Thunder Basin* tried to discern from "the statutory scheme" in the Mine Act whether Congress "intended to preclude initial judicial review" of the plaintiff's claims by

allocating that task "to an administrative body." *Thunder Basin*, 510 U.S. at 207. Central to the Court's conclusion that Congress intended to preclude initial judicial review was its observation that the Mine Act did not explicitly authorize mine operators like the plaintiff to sue in district court. *See id.* at 209.

The same, however, cannot be said of the right of school boards to file suit in district court under Title IX, particularly schools like Highland that seek to invalidate an unlawful agency rule rather than an agency order issued in the course of an administrative proceeding.[1] Title IX states that "[a]ny department or agency action taken pursuant to section 1682 . . . shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds." 20 U.S.C. § 1683. One form of agency action taken pursuant to Section 1682 is the issuance of agency "rules," 20 U.S.C. § 1682, and the APA allows litigants to challenge agency rules in district court, as Highland has done here. *See* 5 U.S.C. § 704 (providing for judicial review of "final agency action"); 5 U.S.C. § 551(13) (providing that "'agency action' includes the whole or a part of an agency rule"); *see also Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 582 (2d Cir. 1987) (per curiam) (explaining that "[t]he statute by which federal agency action 'similar' to that involved here is made reviewable is the [APA]"). Title IX and the APA thus expressly authorize Highland to bring this suit in this Court. As a result, Defendants' reliance on

---

[1] Highland's complaint contests Defendants' unlawful agency rule declaring that the term "sex" under Title IX includes gender identity. It does not, contrary to Defendants' suggestion, challenge a forthcoming order terminating its federal funding or the OCR's Letter of Findings that serve as a prelude to that order. To be sure, the facts surrounding OCR's attempts to enforce the rule against Highland demonstrate that Highland has suffered (and will continue to suffer) injury and that its challenge to the rule is ripe. But Defendants' unlawful rule—not OCR's enforcement efforts—is the focus of Highland's claims.

*Thunder Basin*, where the Mine Act did not explicitly permit mine operators to sue in district court, is misplaced.

Other facts distinguish *Thunder Basin*. There, Congress clearly indicated that it did not intend to allow a challenge to agency action in district court; it did so by, among other things, "expressly eliminat[ing] the power of a mine operator to challenge a final penalty assessment *de novo* in district court." *Thunder Basin*, 510 U.S. at 211. Here, in contrast, not only (as discussed above) has Congress allowed a challenge like this to be brought exactly as Highland has done, Title IX's legislative history "rather plainly indicates that Congress intended to create" implied causes of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979). Moreover, while the *Thunder Basin* Court acknowledged that the Mine Act outlined a "comprehensive enforcement structure," 510 U.S. at 216, "[n]o similar elaborate statutory framework exists" under Title IX, *see Texas*, Order at 20.

Three other considerations discussed in *Thunder Basin* confirm that it does not control here. First, adopting Defendants' position will deprive Highland of any "meaningful judicial review" of its challenge to Defendants' agency rule. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010). If Highland cannot obtain review of its claims until after it is forced to defend against Doe's third-party complaint, judicial review will not be meaningful to the school or its officials. Second, Highland's "administrative-law and constitutional claims about [Defendants'] rulemaking and statutory authority . . . are wholly collateral to [Title IX's] review scheme because they challenge a rule-making procedure and the new rule's content, not an enforcement action taken by [OCR]." *Ohio Coal Ass'n v. Perez*, -- F.Supp.3d --, No. 2:14-CV-2646, 2016 WL 3350466, at *10 (S.D. Ohio June 16, 2016).

Third, whether Defendants violated the APA or the Constitution when they created their rule "is a high-level [legal] question" that is "not well-aided by [Defendants'] particular expertise." *Id.* at *9. Indeed, the Supreme Court has recognized that agency expertise is not required for "standard questions of administrative law" or constitutional issues. *Free Enter. Fund*, 561 U.S. at 491. *Thunder Basin* thus does not strip this Court of jurisdiction.

At least two other cases undermine Defendants' jurisdictional argument. First, Defendants' attempt to preclude this lawsuit is reminiscent of the recently rejected efforts to limit APA review in *Sackett v. EPA*, 132 S. Ct. 1367, 1372-74 (2012). The government there argued that even though the APA creates a "presumption favoring judicial review of administrative action," *id.* at 1373, APA review should be foreclosed because of Clean Water Act provisions prescribing judicial review only in certain situations. Faced with a similar argument here, this Court should follow the *Sackett* Court's example and hold that an "express provision of judicial review in one section" of a statute like Title IX is not "enough to overcome the APA's presumption of reviewability for all final agency action." *Id.*

Second, a district court in this circuit has already rejected a jurisdictional argument similar to what Defendants assert here. In *Romeo Community School v. U.S. Department of Health, Education, & Welfare*, 438 F. Supp. 1021 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979), a school board in Michigan brought an APA challenge to an agency rule promulgated under Title IX. In response, the federal government argued that the "statutorily-created review procedure" directing that "any final action by [DOE] terminating financial aid" be appealed to the circuit court "is exclusive and precludes this court from entertaining plaintiff's action under the [APA]." *Id.* at 1027. Rejecting that argument, the court explained:

"Even if the Court of Appeals has jurisdiction under the reviewing statutes . . . to adjudicate the issues raised in this case, such jurisdiction would not be exclusive. Here, . . . the legislative scheme explicitly contemplates a cause of action under the [APA] for redress of unlawful agency action 'not otherwise subject to judicial review.'" *Id.* at 1029. There is thus no need, the court held, "to await uncertain future opportunities for legal redress before the Court of Appeals." *Id.* This Court should adopt the same reasoning.

### B.    Defendants' rule is final agency action.

Defendants do not deny that their rule is the "consummation of [a] decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see* Defs.' Opp. at 12. Rather, they assert that the rule is not an action by which "rights or obligations have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at 178, because it "merely lays out [Defendants'] interpretation of Title IX" and restates obligations already required by the statute. Defs.' Opp. at 12. Experience belies that argument. Recipients of funding subject to Title IX have understood for decades that they may separate intimate facilities based on sex. *See* 20 U.S.C. § 1686; 34 C.F.R. §§ 106.32, 106.33. Only recently have Defendants begun announcing and enforcing a contrary rule. *See* Dear Colleague Letter at 1 (May 13, 2016) (ECF No. 10-3). Lest this Court implausibly think that Defendants have allowed widespread violations of Title IX for decades, this history confirms that Defendants have created new rights and obligations by promulgating their rule. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168 (2012) ("[W]here . . . an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, . . . it may be possible for an entire industry to be in violation of the [statute] for a long time without the . . . [agency]

noticing, [but] the more plausible hypothesis is that the [agency] did not think the . . . practice was unlawful.") (quotation marks and citations omitted).

Furthermore, the cases that Defendants cite are readily distinguishable from the facts of this case. In *Rhea Lana Inc. v. Department of Labor*, -- F.3d --, 2016 WL 3125035 (D.C. Cir. June 3, 2016), an agency sent a letter to a company indicating "that employees of for-profit entities are subject to the [Fair Labor Standard Act's] wage-and-hour provisions." *Id.* at *4. The court found that the letter was "final agency action" because it was "more than mere agency advice" given that it made the company "eligible for civil penalties in" a "future enforcement action." *Id.* Similarly here, Defendants' rule dictates "how [Defendants] evaluate . . . compliance with . . . obligations" under Title IX, *see* Dear Colleague Letter at 1 (May 13, 2016) (ECF No. 10-3); and Defendants have indicated that Highland's violation of the rule will result in an imminent enforcement action that imperils its federal funding, *see* Letter of Impending Enforcement Action, OCR, Region XV, at 14-15 (July 29, 2016) (ECF No. 24-1). Defendants nevertheless want to distinguish *Rhea Lana* because they argue that the application of civil penalties but not the withdrawal of federal funding creates final agency action. Yet that distinction is unpersuasive because civil fines and the withdrawal of funding are both monetary penalties designed to encourage regulatory compliance.

There is another reason that *Rhea Lana* does not support Defendants. The letter in that case merely apprised the company of longstanding law, and the court cited several "advisory opinions, letters, and other agency publications confirming [the agency's] longstanding interpretation." *Rhea Lana Inc.*, 2016 WL 3125035 at *4. But here, rather than

7

restating the law or an agency's longstanding view of it, Defendants' rule is a recent pronouncement that is contrary to Title IX and its implementing regulations.

Defendants also rely on *American Tort Reform Association v. OSHA*, 738 F.3d 387 (D.C. Cir 2013), a case that challenged an agency communication describing the preemptive scope of a statute. Because the parties there "agree[d] that OHSA lack[ed] legal authority to determine the preemptive effect of the OSH Act," *id.* at 390, the court observed that the agency's communication was "not subject to judicial review *unless it is relied upon or applied to support an agency action in a particular case.*" *Id.* (emphasis added); *see also id.* at 393 ("[G]iven that OHSA has no authority to issue authoritative statements on the preemptive effect of the OHS Act. . . it is not subject to judicial review unless OSHA relies on [it] or purports to apply it in support of an agency action in a particular case."). But that is precisely what has happened here. Defendants have issued a rule, and they are relying on it in their efforts to punish Highland and in several other enforcement efforts across the country. *See* Pl.'s Compl. at ¶¶ 48-55 (discussing Defendants' nationwide efforts to enforce its rule, including efforts in California, Illinois, New York, and North Carolina). As a result, *American Tort Reform* does not support Defendants' arguments.

Courts have frequently held that "an agency's interpretation of its governing statute, with the expectation that regulated parties will conform to and rely on this interpretation, is final agency action." *Indep. Bankers Ass'n of Am. v. Smith*, 534 F.2d 921, 929 (D.C. Cir. 1976) (collecting cases); *see also Franklin Fed. Sav. Bank v. Dir., Office of Thrift Supervision*, 927 F.2d 1332, 1337 (6th Cir. 1991) (explaining that whether an agency "demand[s] compliance" is relevant). The label that the agency selects is not controlling. *See First Nat'l Bank of Lexington,*

*Tenn. v. Sanders*, 946 F.2d 1185, 1188 (6th Cir. 1991) (per curiam); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000) ("It is well-established that an agency may not escape . . . notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation."). Even the cases that Defendants cite acknowledge this. *See Am. Tort Reform Ass'n*, 738 F.3d at 395 ("Of course, if an agency issues a statement that is labeled an interpretive rule or a policy statement and it has all the indicia of a final legislative rule, then the rule will be subject to review."). An agency thus cannot insulate its activities from judicial review simply by choosing a letter as the form through which it expresses its definitive position. *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 701 (D.C. Cir. 1971); *see also Appalachian Power*, 208 F.3d at 1020 (discussing how agencies issue "guidance" to gain the "advantage" of "immunizing its lawmaking from judicial review").

To determine whether an agency statement is binding, courts look at its language, its effect on "individual rights and obligations," and its impact on "administrative discretion in all future cases." *Dyer v. Sec'y of Health & Human Servs.*, 889 F.2d 682, 685 (6th Cir. 1989) (per curiam); *see also Indep. Bankers Ass'n of Am.*, 534 F.2d at 929 (finding judicial review appropriate when "administrative reconsideration . . . seems quite unlikely"). Here, given the mandatory language of Defendants' pronouncement, *see* Pl.'s Mem. at 16-17, and Defendants' widespread enforcement of it, *see* Pl.'s Compl. at ¶¶ 48-55, there is no room for reconsideration or administrative discretion, and the rule is thus final agency action.[2]

---

[2] The arguments in this section also explain why Defendants' rule is legislative and thus subject to notice-and-comment procedures. *See* Pl.'s Mem. at 16-18. They further demonstrate why Defendants are incorrect in asserting that their rule is merely interpretive.

### C.     Highland does not have an adequate remedy outside of the APA.

Defendants contend that Highland has an "adequate remedy" outside of the APA because it can defend against the enforcement action that Defendants will bring. *See* Defs.' Opp. at 15-16. This argument fails for all the reasons raised in Section (I)(A) above and for two additional reasons identified here. First, Defendants have not shown that Highland has any alternative manner in which to raise its challenge to Defendants' rule. Defendants rely on the mechanism for judicial review under 20 U.S.C. § 1234g. But that avenue is available only when appealing an order that withholds funding or instructs a recipient to refrain from unlawful conduct. 20 U.S.C. § 1234g(a). Because Highland is challenging an unlawful agency rule (not an order), 20 U.S.C. § 1234g does not allow review of its challenge to the rule, and thus adopting Defendants' argument would violate "the presumption of reviewability for all agency actions." *Texas*, Order, at 21.

Second, any remedy that Highland might be able to obtain by appealing an unfavorable agency order or defending against an enforcement action filed by DOJ would not be adequate. Highland must immediately resist the third-party complaint that Doe filed against it. So any judicial review that Highland might receive in the future would be wholly inadequate to protect its rights and interests threatened now. *Cf. Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016) (finding an adequate remedy where a plaintiff had an opportunity to appeal from a prior agency order and did not do so).

---

*See* Defs.' Opp. at 23-25. Indeed, a federal district court in Texas recently held that this rule is "legislative and substantive" because Defendants confirmed "that schools not acting in conformity with [it] are not in compliance with Title IX" and because recent "events, where Defendants have moved to enforce the [rule] as binding," further demonstrate that it is "compulsory in nature." *Texas*, Order, at 26-27.

### D.    Defendants' rule is not entitled to deference.

Under *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984), a court must "defer to the agency's interpretation" of a statute that it administers when (1) the intent of Congress is unclear and (2) the agency has made "a reasonable interpretation" of the statutory provision. *Kentucky Waterways All. v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008). And under *Auer v. Robbins*, 519 U.S. 452 (1997),  courts must "defer to the agency's interpretation" of "an agency regulation" when (1) "the language of the regulation is ambiguous" and (2) the agency's interpretation is not "plainly erroneous or inconsistent with the regulation." *Kentucky Waterways All.*, 540 F.3d at 474-75. Defendants are not entitled to deference under either of these doctrines because Defendants seek to redefine an unambiguous term. *Id.* ("If the language of the regulation is clear, then '[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create a de facto new regulation.'"); *id.* at 474 ("[i]f the intent of Congress is clear, that is the end of the matter.").

Defendants make much of the fact that the term "sex" is not expressly defined in Title IX or its implementing regulations. *See* Defs.' Opp. at 16 ("That absence of a definition in the regulatory scheme is central to the issues before the Court."). But a statute does not become ambiguous because some of its terms are left undefined. Rather, undefined statutory terms are "interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). Because the ordinary meaning of the term "sex" is unambiguous and plainly does not include gender identity, *see* Pl.'s Memo at 11-15, Defendants have failed to demonstrate the ambiguity necessary to invoke *Chevron* or *Auer* deference, as a federal court

11

in Texas recently concluded. *See Texas*, Order, at 31-32 (concluding that *Auer* deference does not apply, that the term "sex" in Title IX and its regulations is "not ambiguous," and that "the plain meaning" of that term when enacted "meant the biological and anatomical differences between male and female students as determined at their birth").

Defendants also put much stock in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), but *Smith* does not support their position. In that case, the Sixth Circuit held that a male— "biologically and by birth," who began asserting a female identity, *id.* at 568—may state a Title VII sex-stereotyping claim if he demonstrates that he was discriminated against because he did not act and appear "masculine enough." *Id.* at 572-73. *Smith*, however, changes nothing about the definition of the word "sex" in Title VII—much less in Title IX.

In fact, the *Smith* court refused to find that Title VII prohibits discrimination based on transgender status; it did so by issuing an amended opinion deleting a paragraph that would have added protection on that basis. *Compare Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004), *with Smith v. City of Salem*, 369 F.3d 912, 921-22 (6th Cir. 2004) (deleting, among other things, language stating that a person alleges "a claim of sex stereotyping pursuant to Title VII" "to the extent that [he] . . . alleges discrimination based solely on his identification as a transsexual"). But here, Defendants' rule, as articulated in their Dear Colleague letter, asserts that Title IX "encompasses discrimination based on a student's gender identity, including discrimination based on a student's transgender status." Dear Colleague Letter at 1 (May 13, 2016) (ECF No. 10-3). Because the *Smith* court expressly

refused to read into federal law the protection that Defendants attempt to insert into the term "sex," *Smith* does not support Defendants' position.[3]

As they do with *Smith*, Defendants stretch *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), beyond what it can bear. They cite it to support the proposition that "the Supreme Court has refused to restrict the meaning of Title IX to what was in the minds of the legislators who drafted it." Defs.' Opp. at 19. But contrary to this assertion, *Oncale*'s holding is consistent with the meaning and text of Title VII. *See* 523 U.S. at 80 (finding that a male could allege a claim under Title VII for same-sex sexual harassment so long as the sexual harassment "meets the statutory requirements," and explaining that "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed"). *Oncale* merely affirmed that it was appropriate to apply a principle already encompassed in the terms of the statute to a situation over which courts had expressed doubt; it does not support Defendants' transformation of the term "sex."

Defendants similarly seek support from the Fourth Circuit's divided decision in *G.G. v. Gloucester County School Board*, 822 F. 3d 709 (4th Cir. 2016), *mandate recalled, stay granted by Gloucester County School Board v. G.G.*, 136 S. Ct. 2442 (2016). But contrary to Defendants' claim, Highland's arguments were neither "considered" nor "rejected" in that case. Defs.' Opp. at 22. *Gloucester* considered only the government's view of 34 C.F.R. § 106.33 (not its redefinition of Title IX itself); the court limited its holding to restroom access; and it did not

---

[3] Defendants cite a few other cases that apply Title VII to individuals whose professed gender identity differs from their sex. Defs.' Opp. at 17. But in doing so, they ignore far more relevant case law—the great weight of authority establishing that Title IX permits intimate facilities to be separated based on sex. *See* Pl.'s Mem. at 15 (collecting cases).

assess constitutional privacy rights or constitutional violations of the Spending Clause. *See* 822 F.3d at 723. Because the court there did not analyze all the arguments raised here, that decision does not undermine Highland's position. In addition, the Supreme Court recently recalled the mandate in that case—an extraordinary step that it could take only after finding "a fair prospect that a majority of the [Supreme] Court will vote to reverse." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). In light of this, this Court should not rely on the Fourth Circuit's split decision in *Gloucester*.

Moreover, Defendants' rule is not entitled to deference because declaring that the term "sex" in Title IX includes gender identity is "plainly erroneous." *Kentucky Waterways All.*, 540 F.3d at 474. This is true for many reasons. First, Defendants' rule is contrary to the weight of legal authority. *See* Pl.'s Mem. at 15 (collecting cases); *supra* at 12-13 (discussing *Smith*). Second, Defendants' rule fails to consider important problems that it creates, and it conflicts with prior agency interpretations. *See* Pl.'s Mem. at 19-23. Third, Defendants' rule effectively nullifies the ability of schools to separate overnight accommodations, locker rooms, and restrooms based on sex. *See* Pl.'s Mem. at 13-14. For these reasons, Defendants' rule is not entitled to deference. *See Christopher*, 132 S. Ct. at 2167-69 (declining *Auer* deference where the agency's interpretation "lack[ed] the hallmarks of thorough consideration" and was "flatly inconsistent with the [statute]").

### E. Defendants' actions violate the Constitution.

#### 1. Defendants' rule violates the Spending Clause's notice requirement.

"States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Sch. Dist. of City of Pontiac*, 584 F.3d at 268. Here, Defendants

argue that the term "sex" in both Title IX and its regulations is ambiguous. *See* Defs.' Opp. at 16-25. If Defendants are right about that, then no funding recipient could have had "clear notice" of the rule that Defendants have now adopted. *Sch. Dist. Of City of Pontiac*, 584 F.3d at 270. Accordingly, that rule must violate the Spending Clause.

Resisting that conclusion, Defendants rely primarily on *Bennett v. Kentucky Department of Education*, 470 U.S. 656 (1985), and *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999). But neither case assists their cause. In *Bennett*, "[b]oth the statutory provision and the implementing regulations expressly" prohibited the actions taken by the funding recipient, 470 U.S. at 671; and the Court thus found that "[t]here was no ambiguity with respect to [that] condition," *id.* at 666. Here, however, Defendants' rule is such a drastic departure from any fair reading of Title IX and its regulations that Highland could not possibly have had notice of it. And in *Davis*, the court considered whether student-on-student sexual harassment was sufficiently encompassed within Title IX to warrant liability against a school district. Nothing in the statute, the Court concluded, suggested that sex discrimination in that form was somehow excluded from Title IX. Here, in contrast, Defendants' rule makes Title IX nonsensical because the living-facilities provision and its implementing regulations permit schools to separate facilities in the very way that Defendants assert they may not. 20 U.S.C. § 1686; 34 C.F.R. §§ 106.32, 106.33. There can be no clear notice when an agency's current demands conflict with the governing statute and its implementing regulations.

Defendants also try to escape the notice requirement by promising that if they "sought to terminate funds at all, [they] would only seek to terminate future funding

prospectively." Defs.' Opp. at 27. Yet this does not solve the "clear notice" violation under the Spending Clause. *Bennett* is instructive. There, "[t]he State gave certain assurances as a condition for receiving the federal funds," *Bennett*, 470 U.S. at 663; thus, its "liability [was] determined by[] the legal requirements in place when the grants were made," *id.* at 670; *see also* Pl's Mem. at 24. To assess whether a violation of the Spending Clause has occurred, or whether a recipient has forfeited funds, courts must look to the requirements in place at the time that the funding was accepted. Any other analysis would negate the notice requirement because so long as the government clearly announces a subsequent change, it could alter the terms whenever it wanted. Nothing supports such a lax view of the notice requirement.

### 2. Defendants' rule unlawfully seeks to coerce Highland to adopt policies in violation of the Spending Clause.

Defendants resist Highland's coercion argument, alleging that, unlike in *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012), Defendants are not leveraging one government program to induce Highland to make an unrelated policy choice. Defs.' Opp. at 27. By focusing on this consideration, Defendants have shown that they misunderstand the Spending Clause's coercion principle. A violation does not hinge on whether Congress plays one federal program off another; rather, the degree of the coercive pressure is the decisive factor. *See Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937) (explaining that courts consider whether the government has exerted "a power akin to undue influence" and that "the location of the point at which pressure turns into compulsion, and ceases to be inducement, [is] a question of degree"); *NFIB*, 132 S. Ct. at 2604 (similar); *id.* at 2664 (Scalia, J., dissenting) (similar). That is what the Court was concerned with in *South Dakota v. Dole*, 483 U.S. 203, 211 (1987), and in *NFIB*, 132 S. Ct. at 2602-05. While the Court has not set the

16

outer bounds of that limit, *id.* at 2606, the degree of pressure that Defendants are applying here crosses into the forbidden realm of compulsion. *See* Pl.'s Mem. at 24-25.

> 3. **Section 5 of the Fourteenth Amendment does not provide an independent constitutional basis for Title IX's enactment.**

Doe tries to excuse Defendants' Spending Clause violation by arguing that Section 5 of the Fourteenth Amendment provides an independent basis for Title IX's enactment. Doe's Opp. at 10. This is not true. As Doe acknowledged, "the Supreme Court has recognized that Title IX is Spending Clause legislation." *Id.* Doe nevertheless wants this Court to infer that Congress also invoked its power under Section 5 of the Fourteenth Amendment. *Id.* But courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *Gregory v. Ashcroft*, 501 U.S. 452, 469 (1991) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16 (1981)). This is particularly true where, as here, Congress "intrudes on traditional state authority" over the issue of education. *Id.* Moreover, Section 5 applies only to "remedial" legislation that "enforc[es]" the Fourteenth Amendment; it does not include substantive legislation that extends beyond the Fourteenth Amendment's protection. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). Because Title IX casts a broader net than the Fourteenth Amendment allows—by, for example, applying to private actors like nonpublic schools that receive federal funding—that statute exceeds Congress's enforcement power under Section 5.[4]

---

[4] Although the Sixth Circuit has stated that Congress used its Section 5 power when enacting a statute that waived sovereign immunity for Title IX claims more than a decade after Title IX's initial enactment, *see Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (discussing 42 U.S.C. § 2000d-7), that observation does not establish that Congress passed Title IX pursuant to Section 5 of the Fourteenth Amendment.

### 4. Defendants' rule forces Highland to violate its students' constitutional rights of bodily privacy.

Defendants argue that Highland lacks standing to assert the privacy rights of students. Defs. Resp. at 28. This argument, however, ignores that Highland is "acting *in loco parentis*" and has the right and solemn duty to take steps "to protect children" entrusted to its care. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986).

Proceeding to the merits of these privacy concerns, Defendants falsely assert that Highland tries to create a right "to sex-specific facilities from which transgender students are excluded." Defs.' Opp. at 30. Highland instead invokes the fundamental right to access government-owned sex-specific intimate facilities without being forced to sleep, change clothes, or use the restroom with the opposite sex. Pl.'s Mem. at 22-23; *see also Texas*, Order, at 31-32 (explaining that Title IX's regulations permit sex-specific locker rooms and restrooms because those areas "are places where male and female students may have to expose their 'nude or partially nude body, genitalia, and other private parts,' and separation from members of the opposite sex, those whose bodies possessed a different anatomical structure, was needed to ensure personal privacy"). While the Sixth Circuit has grounded similar fundamental privacy rights in the Fourth Amendment, *see Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 494-95 (6th Cir. 2008), it has never had occasion to address the precise privacy right asserted here, which is "deeply rooted in this Nation's history and tradition" and thus rooted in the Fourteenth Amendment, *see Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); Pl.'s Mem. at 22-23. Contrary to Defendants' arguments, they have tried to "interfere[] 'directly' and 'substantially'" with this fundamental right. *Cf.* Defs.' Opp. at 31. They have done so by attempting to coerce Highland—a school district with at least one

18

student who seeks to use intimate facilities designated for the opposite sex—to create a policy that will necessarily violate these fundamental rights. Given this, strict scrutiny applies, but Defendants cannot satisfy that stringent standard, and indeed, they do not even argue that they can meet strict scrutiny's narrow-tailoring requirement. *See* Defs.' Opp. at 32. Defendants' rule thus contravenes constitutional principles.

## II.     Highland will suffer irreparable harm absent a preliminary injunction, and the balance of equities and public interest weigh in Highland's favor.

Highland reiterates that Defendants' rule violates its rights under the Spending Clause. Because Defendants have not undermined Highland's Spending Clause claim, this Court should find that that constitutional violation alone establishes irreparable harm.

In their opposition, Defendants argue that none of the harm facing Highland is imminent because Highland will be entitled to judicial review before its funding is stripped or its policies enjoined. *See* Defs.' Opp. at 32-33. But the interim hardship that Highland will suffer during the impending enforcement action—all of which will owe its existence to Defendants' enforcement of its agency rule—is irreparable. *See Ironridge Glob. IV, Ltd. v. Sec. & Exch. Comm'n*, 146 F. Supp. 3d 1294, 1317 (N.D. Ga. 2015) (finding an irreparable harm from subjecting a party to an "unconstitutional administrative proceeding"). In addition, now that Doe has intervened in this lawsuit, the imminence of the threatened harm has increased exponentially. Doe demands, based in part on an understanding of Title IX informed by Defendants' unlawful rule, that this Court must preliminarily enjoin Highland from applying its policies regulating access to overnight accommodations, locker rooms, and restrooms. That reinforces the irreparable harm that Highland has already identified.

When the Supreme Court issued its stay in the *Gloucester* case, the Court necessarily concluded that the school established "a likelihood that irreparable harm will result" from forcing it to implement a gender-identity-based policy. *Hollingsworth*, 558 U.S. at 190. Because the school board's irreparable-harm arguments were nearly identical to those that Highland raises here, *see* Petitioner's Application for Recall and Stay of the U.S. Fourth Circuit's Mandate Pending Petition for Certiorari at 33-36, *Gloucester Cty. Sch. Bd. v. G.G.*, 136 S. Ct. 2442 (Aug. 3, 2016) (No. 16A52), available at http://bit.ly/2beKxGn, this Court should similarly grant the preliminary injunction that Highland requests.

In light of the irreparable harm identified, particularly when balanced against the absence of harm to the public and others from issuing an injunction, this Court should conclude that the balance of equities and public interest weigh in Highland's favor. Indeed, putting Highland "in the position of either maintaining [its] current policies in the face of the federal government's view that [it is] violating the law, or changing [the policies] to comply with [Defendants' rule] and cede [its] authority" to protect the interests of all its students, inflicts a harm that outweighs any identified by Defendants. *Texas*, Order, at 35-36.

## **CONCLUSION**

Highland respectfully requests that this Court issue the preliminary injunction requested in Highland's motion.

Date: August 23, 2016

                Respectfully submitted,

                <u>s/ James A. Campbell</u>
                James A. Campbell, OH Bar No. 0081501
                    *Trial Attorney*
                Kenneth J. Connelly, AZ Bar No. 025420*
                Jeana Hallock, AZ Bar No. 032678*
                ALLIANCE DEFENDING FREEDOM
                15100 North 90th Street
                Scottsdale, Arizona 85260
                (480) 444-0020
                (480) 444-0028 Fax
                jcampbell@ADFlegal.org
                kconnelly@ADFlegal.org
                jhallock@ADFlegal.org

                J. Matthew Sharp, GA Bar No. 607842*
                ALLIANCE DEFENDING FREEDOM
                1000 Hurricane Shoals Road NE
                Suite D-1100
                Lawrenceville, Georgia 30043
                (770) 339-0774
                (770) 339-6744 Fax
                msharp@ADFlegal.org

                Andrew J. Burton, OH Bar No. 0083178
                RENWICK, WELSH & BURTON LLC
                9 North Mulberry Street
                Mansfield, Ohio 44902
                (419) 522-2889
                (419) 525-4666 Fax
                andrew@rwblawoffice.com

                *Counsel for Plaintiff*
                *\*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2016, I filed the foregoing Reply in Support of

Motion for Preliminary Injunction documents through the Court's ECF system.

<u>s/ James A. Campbell</u>
James A. Campbell