IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF EDUCATION OF THE HIGHLAND LOCAL SCHOOL DISTRICT (OH), | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:16-cv-00524 |
| UNITED STATES DEPARTMENT OF EDUCATION; JOHN B. KING, JR., in his Official Capacity as United States Secretary of Education; UNITED STATES DEPARTMENT OF JUSTICE; LORETTA E. LYNCH, in her Official Capacity as Attorney General of the United States; and VANITA GUPTA, in her Official Capacity as Principal Deputy Assistant Attorney General, | § § § § § § § § § § § § | |
| Defendants. | § § | |

**BRIEF OF TEXAS, ARKANSAS, ARIZONA, WEST VIRGINIA, ALABAMA, WISCONSIN, GEORGIA, NEBRASKA, LOUISIANA, SOUTH CAROLINA, COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin, UTAH, and GOVERNOR PHIL BRYANT of the State of Mississippi AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**INTEREST OF *AMICI CURIAE* AND INTRODUCTION**

*Amici* are some of the fifty States, including many of the over 100,000 school districts across the country, impacted by Defendants' efforts to employ executive power to act legislatively and rewrite a duly enacted law of Congress. While the extant dispute focuses on a single school district, Defendants' actions affect everyone.

This short brief addresses three issues. First, it explains why Defendants' guidance documents constitute final agency action. Second, this brief demonstrates the nationwide harm caused by Defendants in usurping the authority of States and local school districts to exercise control over the education of children within their jurisdiction, and the facilities in which those children are educated. Third, this brief addresses the coercive nature of the tactics employed by Defendants to enforce their new rule across the country, all in violation of the Spending Clause.

**ARGUMENT**

**I.  Defendants' Guidance Documents are Final Agency Action.**

Though labeled as "guidances," "interpretations," and the like, Defendants' publications are final agency actions for several reasons. As far as the law is concerned, actions speak louder than words. Though Defendants contend that their new rule is not binding, ECF No. 33 at 24–26, they are nonetheless culpable for making new law in fact by their actions.

First, agency actions that affect rights and obligations are legislative. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979); *Morton v. Ruiz*, 415 U.S. 199, 232 (1974); *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 238 (D.C. Cir. 1992). In *Chrysler*, the Supreme Court held that requiring businesses with government contracts to furnish reports is a legislative rule because it affects the rights of contractors. *Chrysler*, 441 U.S. at 303. Thus, the agency cannot affect the rights of contractors without complying with the APA. *Id*. Similarly, in *Ruiz*, the Supreme Court concluded that an agency cannot deny federal benefits without

submitting eligibility requirements to APA procedures. *Ruiz*, 415 U.S. at 236.

Here, Defendants affect the rights and obligations of States, public schools, and students across the country. Under the DOE/DOJ Joint Letter (ECF No. 33-5), Title-IX linked funds are now no longer available to otherwise eligible schools that do not open their intimate facilities to both sexes. This change has financial and other consequences, as evidenced by this litigation, and other like litigation across the country.[1] The "legitimate expectation" of schools to federal funds may "not be extinguished" by a new rule "not promulgated in accordance with . . . the Administrative Procedure Act." *Ruiz*, 415 U.S. at 236.

Second, "[i]f a second rule repudiates or is irreconcilable with [a prior rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative."[2] *Sullivan,* 979 F.2d at 235 (internal quotations omitted). As Judge Easterbrook explained: "When an agency gets out the Dictionary of Newspeak and pronounces that for purposes of its regulation war is peace, it has made a substantive change for which the APA may require procedures." *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 412 (7th Cir. 1987).

Defendants changed an existing legislative rule and longstanding agency practice. By requiring schools receiving Title IX-linked funds to open all intimate facilities to both sexes, the DOE/DOJ Joint Letter repeals the existing rule that recipients "may provide separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33. While that rule technically remains on the books, Defendants have effectively repealed or amended it by unmooring the definition of "sex" from a person's biological sex. As the existing rule is legislative,[3] the DOE/DOJ

---

[1] *See, e.g., Texas et al v. United States et al*, 7:16-cv-00054 (N.D. Tex.); *United States v. North Carolina et al*, No. 1:16-cv-425 (M.D.N.C.); *Nebraska et al v. United States et al*, No. 4:16-cv-3117 (D. Neb.).

[2] This is distinguishable from amending a previous *interpretative* rule. *Cf. Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203–04 (2015).

[3] *See* Nondiscrimination on the Basis of Sex in Education Programs 40 Fed. Reg. 24128, 24141 (June 20, 1974) (giving notice of the rule providing for sex-separated intimate facilitates).

Joint Letter is as well. *Am. Mining Cong. v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1112 (D.C. Cir. 1993) (rule amending prior legislative rule is legislative). Thus, the DOE/DOJ Joint Letter cannot change the prior rule, 34 C.F.R. § 106.33, without notice and comment. *Sprint Corp. v. FCC*, 315 F.3d 369, 374 (D.C. Cir. 2003) (new rule that causes substantive changes must undergo APA procedures).

Third, an agency rule is legislative "if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2001) (citation omitted). The DOE/DOJ Joint Letter meets both criteria. From beginning to end, it reads like an edict. It "command[s]," "require[s]," "order[s]," and "dictate[s]." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000). Specifically, the DOE/DOJ Joint Letter uses "must" 15 times, and "requirement" and "required" 10 times. It dictates how DOE and DOJ officials are to enforce Title IX. The DOE/DOJ Joint Letter is signed by the officials responsible for bringing enforcement actions and explains "how the Departments will evaluate whether covered entities are complying with their legal obligations."

## II. Defendants' New Rule Hurts Every State and School District.

The full breadth of Defendants' new rule was brought to the fore through the recent lawsuit brought by Defendants against North Carolina for having the same policy as Plaintiff. *See United States v. North Carolina,* No. 1:16-cv-425 (M.D.N.C.). It is now clear that Defendants are in enforcement mode across the country, with every State and school district the clear object of their new rule. Not only is it too late for Defendants to dodge judicial review, but it is clear that Defendants' new rule harms States and school districts from coast to coast, usurping their lawful authority over the regulation of educational institutions and the management of their facilities.

### A. Defendants' New Rule Usurps Authority in Every Jurisdiction.

Laws across the country establish State and local officials' power to manage their educational facilities, including physical control over intimate areas. Indeed,

"[w]hether it is the school curriculum [or other matters], these issues of public education are generally 'committed to the control of state and local authorities.'" *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395–96 (6th Cir. 2005) (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975)). This is true in Ohio,[4] as well as every other State, to wit: Alabama,[5] Alaska,[6] Arizona,[7] Arkansas,[8] California,[9] Colorado,[10] Connecticut,[11] Delaware,[12] Florida,[13] Georgia,[14] Hawai'i,[15] Idaho,[16] Illinois,[17] Indiana,[18] Iowa,[19] Kansas,[20] Kentucky,[21] Louisiana,[22] Maine,[23] Maryland,[24] Massachusetts,[25] Michigan,[26] Minnesota,[27] Mississippi,[28] Missouri,[29] Montana,[30]

---

[4] *See* State of Ohio Am. Cur. Br. in Supp. of [Plaintiff's] Mot. for Prelim. Inj., ECF No. 11-1 at 14–16; OHIO CONST. art. VI, §§ 3, 4; OHIO REV. CODE § 3313.47.
[5] *See* ALA. CODE §§ 16-3-11, 16-3-12 (state boards); 16-8-8–16-8-12 (city and county boards).
[6] *See* ALASKA CONST. art. VII, § 1; ALASKA STAT. § 14.07.010–020; ALASKA ADMIN. CODE tit. IV § 31.010.
[7] *See* ARIZ. REV. STAT. §§ 15-203(A)(1) (state), 15-341(A)(1) (local), 15-341(A)(3) (local).
[8] *See* ARK. CONST. art. XIV, § 4; ARK. CODE §§ 6-11-105, 6-13-1301, 6-21-101.
[9] *See* CAL. CONST. art. IX, §§ 2, 7; CAL. EDUC. CODE §§ 33301, 33307.
[10] *See* COLO. CONST. art. IX, § 9; COLO. REV. STAT. §§ 22-2-106, 22-43.7-107.
[11] *See* CONN. CONST. art. VIII, § 1; CONN. GEN. STAT. §§ 10-240–241.
[12] *See* DE. CONST. art. 10, § 2; DEL. CODE ANN. tit. 14, §§ 121, 801–08, 1501.
[13] *See* FLA. CONST. art. IX, § 2; FLA. STAT. §§ 1001.42(2), 1001.43(1), 1013.04.
[14] *See* GA. CODE §§ 20-2-59, 20-2-520.
[15] *See* HAW. CONST. art. X, §§ 2–3; HAW. REV. STAT. §§ 302A-1101, 302A-1148, 302A-1506; HAW. CODE R. § 8-39-2.
[16] *See* IDAHO CONST. art. IX, §§ 1–2; IDAHO CODE §§ 33-101, 33-107, 33-601.
[17] *See* ILL. CONST. art. X, § 2; 105 ILL. COMP. STAT. §§ 5/1A-4, 34-18.
[18] *See* IND. CONST. art. VIII, §§ 1, 8; IND. CODE §§ 20-19-2-2.1, 20-19-2-14, 20-26-5-1, 20-26-3-4.
[19] *See* IOWA CONST. art. IX, 2nd, § 1; IOWA CODE §§ 256.1, 274.1, 297.9.
[20] *See* KAN. CONST. art. VI, § 2; KAN. STAT. § 72-1033.
[21] *See* KY. REV. STAT. §§ 156.070, 160.290.
[22] *See* LA. CONST. art. VIII, § 3; LSA-R.S. § 17:100.6.
[23] *See* ME. REV. STAT. tit. 20-A, §§ 201–406, 1001(2), 6501.
[24] *See* MD. CONST. art. VIII, § 1; MD. CODE, EDUC. §§ 2-205(b)(1–2), 4-101, 4-108, 4-115.
[25] *See* MASS. GEN. LAWS. ch. 69, § 1B; ch. 71 § 71.
[26] *See* MICH. CONST. art. VIII, §§ 2–3; MICH. COMP. LAWS. § 380.483a.
[27] *See* MINN. CONST. art. XIII, § 1; MINN. STAT. §§ 123B.02, .09, .51.
[28] *See* MISS. CODE ANN. § 37-7-301.
[29] *See* MO. CONST. art. IX, § 1; MO. STAT. §§ 161.092, 171.011, 171.0011(1), 177.031.
[30] *See* MONT. CONST. art. X, §§ 8, 9; MONT. CODE § 20-3-324(15); MONT. ADMIN. R. 10.55.908(6).

Nebraska,[31] Nevada,[32] New Hampshire,[33] New Jersey,[34] New Mexico,[35] New York,[36] North Carolina,[37] North Dakota,[38] Oklahoma,[39] Oregon,[40] Pennsylvania,[41] Rhode Island,[42] South Carolina,[43] South Dakota,[44] Tennessee,[45] Texas,[46] Utah,[47] Vermont,[48] Virginia,[49] Washington,[50] West Virginia,[51] Wisconsin,[52] and Wyoming.[53] Yet, the DOE/DOJ Joint Letter arrogates to Defendants administrative and enforcement responsibility over that which does not belong to them.

That some States or school districts may support the policy objective or substance of Defendants' new rule does not change the fact that their authority to make decisions that are in their own best interests is usurped by Defendants' new rule.

## B. Defendants Enforce Their New Rule Uniformly in Every State.

Irrespective of the individual facts or circumstances presented, every federal agency exercising enforcement power over claims regarding one's "gender identity" (in the context of Titles VII or IX) demands or adjudicates that anyone claiming a "gender identity" opposite their sex has access to the intimate areas of their choice—

---

[31] See NEB. CONST. art. VII, § 2; NEB. REV. STAT. §§ 79-318(6), 79-501, 79-526(1).
[32] See NEV. CONST. art. XI, § 1; NEV. REV. STAT. §§ 385.075, 385.005(1), 386.010(2), 386.350; 393.010.
[33] See N.H. REV. STAT. §§ 186:5, 195:6; N.H. CODE ADMIN. R. Ed § 303.01.
[34] See N.J. CONST. art. VIII, § 4; N.J. STAT. §§ 18A:11-1(c), 18A:4-15.
[35] See N.M. CONST. art. XII, § 6; N.M. STAT. §§ 22-2-1(A), 22-5-4(H).
[36] See N.Y. CONST. art. XI, § 1; N.Y. EDUC. LAW § 414.
[37] See N.C. CONST. art. IX, § 5; N.C. GEN. STAT. § 115C-12.
[38] See N.D. CENT. CODE §§ 15.1-02-04(1)–(2), 15.1-09-33(3).
[39] See OKLA. CONST. art. XIII, § 5; OKLA. STAT. tit. 70, § 5-117.
[40] See OR. REV. STAT. §§ 332.107, 332.155, 332.172(5).
[41] See PA. CONST. art. III, § 14; 24 PA. STAT. §§ 5-507, 7-701, 7-775, 6513.
[42] See 16 R.I. GEN. LAWS § 16-2-9(a), (a)(5), (a)(8).
[43] See S.C. CONST. art. XI, § 3; S.C. CODE §§ 59-19-10, 59-19-90(1), (5).
[44] See S.D. CODIFIED LAWS §§ 13-3-1.4, 13-3-80, 13-8-39, 13-24-9, 13-24-11, 13-24-16, 13-32-1.
[45] See TENN. CODE ANN. §§ 49-1-302, 49-1-201, 49-2-203(a)(2), 49-1-201(a), 49-1-201(c)(5).
[46] See TEX. CONST. art. 7, § 1; TEX. EDUC. CODE §§ 4.001(b), 11.002, 11.051, 11.201, 46.008.
[47] See UTAH CODE §§ 53A-1-101, 53A-3-402(3).
[48] See VT. STAT. tit. 16, § 563(3), (5), (7).
[49] See VA. CONST. art. VIII, §§ 4, 7. VA. CODE §§ 22.1-79, 22.1-125.
[50] See WASH. REV. CODE §§ 28A.150.070, 28A.335.010(1)(b), 28A.335.090(1).
[51] See W. VA. CONST. art. XII, § 2 (state); W. VA. CODE §§ 18-5-1 *et. seq.* (local), 18-5-9(4).
[52] See WIS. STAT. chs. 118, 115; WIS. STAT. s. 120.12(1), 120.13(17), 120.12(12).
[53] See WYO. STAT. § 21-3-111.

and all without regard to the individual circumstances presented, or any resulting impact on third parties.

### 1. EEOC Enforcement.

Defendants are not the only federal agencies to re-author the meaning of "sex" in Titles VII and IX as applied to intimate areas. EEOC determined that an employer must provide restroom access corresponding to one's "internal sense of being male or female (or, in some instances, both or neither)," *Lusardi*, EEOC Decision No. 0120133395, 2015 WL 1607756, at *6 (Apr. 1, 2015), and subsequently issued a "Fact Sheet" regarding this new "requirement."[54] In neither instance did EEOC address the privacy needs and expectations of others. *See* n.68, *infra*. Nor did it address the tension that the new rule creates with Title VII's prohibition against hostile work environments. Indeed, forcing the sexes to mix in intimate areas in the workplace creates a hostile and sexually-harassing work environment for countless employees.[55]

### 2. DOJ & DOL's Enforcements.

Following EEOC's lead, DOJ subsequently substituted "gender identity" for "sex."[56] The Department of Labor (DOL), through the Occupational Health and Safety Administration (OHSA) acted similarly, advising that "employees should be permitted to use the facilities that correspond with their gender identity."[57] Like EEOC, DOJ and OSHA did not acknowledge the privacy needs and expectations of other employees, or whether their decrees would lead to hostile work environments.

---

[54] *See* EEOC Fact Sheet, *available online at* https://www.eeoc.gov/eeoc/publications/fs-bathroom-access-transgender.cfm.
[55] *See, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007) (acknowledging that employer was "genuinely concerned" about the possibility of liability complaints associated with employee's use of restroom for the opposite sex).
[56] *See, e.g.*, DOJ's *Treatment of Transgender Employment Discrimination Claims* at 2, *available online at* https://www.justice.gov/opa/pr/attorney-general-holder-directs-department-include-gender-identity-under-sex-discrimination.
[57] *See* OSHA's *Best Practices: A Guide to Restroom Access for Transgender Workers* at 4, *available online at* https://www.osha.gov/Publications/OSHA3795.pdf.

In May 2016, DOJ sued North Carolina.[58] After the North Carolina legislature affirmed that government and schools may maintain separate-sex intimate facilities, DOJ declared that the State was violating Titles VII and IX.[59]

### 3. DOE's Enforcements.

Within the DOE/DOJ Joint Letter, DOE publicly revealed that it has been enforcing the new rule across the country for some time. The case *sub judice* is but one such instance. Moreover, DOE's past enforcements are uniform, leaving no room for school districts to apply individual solutions and remedies that work best for their institutions and student bodies. No matter the circumstances presented, DOE demanded the same result—that students be given access to the intimate spaces that conform with their chosen "gender identity," and without regard to the privacy, dignity, or safety needs of other students.

In addition to the dispute before the Court, this exacting and uniform demand is seen regarding schools in Kern County, CA,[60] Mecklenburg County, NC,[61] Cook County, IL,[62] Anoka County, MN,[63] Gloucester County, VA,[64] Los Angeles County,

---

[58] *United States v. North Carolina,* No. 1:16-cv-425 (M.D.N.C.).

[59] *See* Letter from Vanita Gupta, Principal Deputy Assistant Attorney General, to Pat McCrory, Governor of North Carolina (May 4, 2016), *available online at* http://online.wsj.com/public/resources/documents/2016.05.04StateFinal.pdf.

[60] *See* Resolution Agreement, *In re Tehachapi Unified Sch. Dist., CA*, OCR No. 09-11-1031 (June 30, 2011), *available online at* www.ed.gov/ocr/docs/investigations/09111031-b.pdf.

[61] *See* Resolution Agreement, *In re Cent. Piedmont Cmty. Coll., NC*, OCR No. 11-14-2265 (Aug. 13, 2015), *available online at* www.ed.gov/ocr/docs/investigations/more/11142265-b.pdf. Though this dispute did not involve access to intimate areas, DOE compelled the college to agree "that gender-based discrimination is a form of discrimination based on sex and state that gender-based discrimination includes discrimination based on a student's gender identity, gender expression, gender transition, transgender status, or gender nonconformity."

[62] *See* Resolution Agreement, *In re Township High Sch. Dist. 211, IL*, OCR No. 05-14-1055 (Dec. 2, 2015), *available online at* www.ed.gov/ocr/docs/investigations/more/05141055-b.pdf. *See also Students and Parents for Privacy v. U.S. Dep't of Educ.*, No. 1:16-cv-04945 (N.D. Ill.) (ECF No. 1 at ¶¶ 99–103).

[63] *See* Consent Decree, *Doe v. Anoka-Hennepin Sch. Dist. No. 11, MN* (D. Minn. Mar. 1, 2012), *available online at* http://www2.ed.gov/about/offices/list/ocr/docs/investigations/05115901-d.pdf.

[64] In *G.G. v. Gloucester Cnty. Sch. Bd.*, DOJ filed a Statement of Interest and argued that the school board's policy of designating restrooms on the basis of biological sex violates Title IX. *G.G. v. Gloucester Cnty. Sch. Bd.*, 4:15-cv-00054-RGD-DEM (E.D. Va.) (ECF No. 28). *See also G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 723 (4th Cir. 2016). The Supreme Court recalled the Fourth Circuit's mandate and stayed the preliminary injunction entered by the district court. *See Gloucester*

CA,[65] [66] and Sumner County, TN.[67] These are only the enforcements publicly known.

## III. Defendants Violate the Spending Clause Across the Country.

Defendants' application of their new rule violates the Spending Clause, both as to the Plaintiff and across the country.

### A. No "Clear Notice" of Defendants' New Rule.

"The legitimacy of Congress's exercise of the spending power 'rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.''" *NFIB v. Sebelius*, 132 S. Ct. 2566, 2602 (2012) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Local officials must be able to "clearly understand," from the language used by Congress, the conditions attached to the money. *Arlington Cent. Sch. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (clear notice was not provided when the text of the law "does not even hint" that fees must be paid to a prevailing party, even though the legislative history indicated otherwise); *NFIB*, 132 S. Ct. at 2606 (Congress's power to legislate under the Spending Clause "does not include surprising participating States with post-acceptance or retroactive conditions." (quoting *Pennhurst*, 451 U.S. at 25)).

Title IX does not say (or "even hint") that the receipt of federal education funding is conditioned on opening intimate areas to both sexes. To the contrary, Title IX, and its implementing regulations, permit separation based on biological sex.[68]

---

*Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, No. 16-A-52, 2016 WL 4131636 at *1 (Aug. 3, 2016).
[65] *See* Resolution Agreement, *In re Downey Unified Sch. Dist., CA*, OCR No. 09-12-1095, (Oct. 8, 2014), *available online at* www.ed.gov/documents/press-releases/downey-school-district-agreement.pdf.
[66] *See* Resolution Agreement, *In re Arcadia Unified. Sch. Dist., CA*, OCR No. 09-12-1020, DOJ Case No. 169-12C-70, (July 24, 2013), *available online at* www.justice.gov/sites/default/files/crt/legacy/2013/07/26/arcadiaagree.pdf.
[67] *See* Letter of Investigation, *In re Sumner Cnty. Sch. Dist., TN*, OCR No. 04-16-1526, (Aug. 9, 2016), *available online at* ECF No. 57-1, *Texas et al. v. United States et al.*, 7:16-cv-00054-O (N.D. Tex.).
[68] The evidence that the plain meaning of the term "sex" refers to a biological category is overwhelming. In Title IX, Congress proclaimed that "nothing contained herein shall be construed to prohibit any educational institution . . . from maintaining separate living facilities for the different sexes," 20 U.S.C. § 1686, and was clear that it envisioned "sex" biologically. *See* 117 Cong. Rec. 30407, 39260, 39263 (1971); 118 Cong. Rec. 5807 (1972). The Department of Health, Education, and Welfare (HEW) made clear that "living facilities" extended to "toilet, locker room, and shower facilities," and that separating

The DOE/DOJ Joint Letter is an unlawful, *post hoc* attempt to rewrite the terms attached to Title IX monies. Because Congress did not provide clear notice that Title IX funds were linked to an "all comers" restroom and intimate areas policy—and in fact *allows* separate-sex facilities—Defendants violate the Spending Clause.

### B. Unconstitutional Coercion.

"Congress may use its spending power to create incentives for States to act in accordance with federal policies, but when pressure turns to compulsion, the legislation runs contrary to our system of federalism." *NFIB*, 132 S. Ct. at 2602. When conditions on the receipt of funds "take the form of threats to terminate other significant independent grants, the conditions are properly viewed as a means of pressuring the states to accept policy changes." *Id.* at 2604; *cf. South Dakota v. Dole*, 483 U.S. 203, 211 (1987). And the threatened loss of an invaluable portion of one's budget "is economic dragooning that leaves [non-federal governments] with no real option but to acquiesce" to the federal demands. *Id.* at 2605.

State and local entities that do not comply with the DOE/DOJ Joint Letter risk losing *all* of their federal education funding, as demonstrated by DOE's prior enforcements, and the extant dispute. And the "financial 'inducement' [Defendants] ha[ve] chosen is much more than 'relatively mild encouragement,'" *NFIB*, 132 S. Ct. at 2604, but a proverbial "gun to the head" of States and school districts. *Id.* School districts throughout the country receive a share of the $69,867,660,640 in annual funding provided by DOE.[69] Threatening to withhold over $69 billion in economic

---

biological men and women is appropriate. *See* 34 C.F.R. §§ 106.32(b); 106.33. Justice Ginsburg, then a law professor, concluded that "[s]eparate places to disrobe, sleep, perform personal bodily functions are permitted, in some situations required, by regard for individual privacy," Ginsburg, The Fear of the Equal Rights Amendment, WASH. POST, Apr. 7, 1975, at A21, as did the U.S. Commission on Civil Rights. *See* U.S. Comm'n on Civil Rights, Sex Bias in the U.S. Code 216 (1977) ("[T]he personal privacy principle permits maintenance of separate sleeping and bathroom facilities."). And the Supreme Court reads the requirements of Title IX the same way. *See, e.g., United States v. Virginia*, 518 U.S. 515, 551 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements . . . .").

[69] *See* DOE, *Funds for State Formula-Allocated and Selected Student Aid Programs, U.S. Dep't of Educ.*

funding from the nation's public schools is clearly "economic dragooning." As to Plaintiff specifically, DOE's "gun to [its] head" jeopardizes a substantial percent of its funding.[70] The percentages in other jurisdictions are comparable.[71] Accordingly, the conditions in the DOE/DOJ Joint Letter amount to unconstitutional coercion.

Though Defendants rely on *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) and *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656 (1985) in an attempt to circumvent the clear notice requirement, ECF No. 33 at 38–39, neither case assists their cause. *Davis* addressed whether liability for "discrimination" extended to malfeasance initiated by third parties. The Supreme Court never concerned itself or attempted to expand the definition of "sex" under Title IX. *Davis*, 526 U.S. at 639–44.

Defendants fare no better under *Bennett*, a case addressing Title I, a law with "general goals." *Bennett*, 470 U.S. at 667. In *Bennett*, "the Federal Government simply could not prospectively resolve every possible ambiguity concerning particular applications of the requirements of Title I." *Id.* at 669. Thus, the law in *Bennett* was clear about its ambiguity. Here, the question surrounds the meaning of a single word—sex—and not the large undefined boundaries of a federal program "involv[ing] multiple levels of government in a cooperative effort." No State possessed clear notice in 1972 that Title IX-linked funds related, in any way, to "gender identity." Thus, Defendants' clear notice arguments should be rejected.

## CONCLUSION

For the reasons stated herein, and in Plaintiff's Motion for Preliminary Injunction, *amici* respectfully submit that the basis of the relief requested by Plaintiff is well-founded, and that the relief they seek should be granted.

---

*Funding*, at 120, *available online at* http://www2.ed.gov/about/overview/budget/statetables/index.html (charts listing the amount of federal education funding by program nationally and by state).
[70] ECF No. 10 at 41.
[71] *See, e.g.*, Nat'l Ctr. For Educ. Statistics, U.S. Dep't of Educ. & Institute of Educ. Sciences, *Digest of Education Statistics*, Tab. 235.20, *available online at* https://nces.ed.gov/programs/digest/d15/tables/dt15_235.20.asp?current=yes.

Respectfully submitted this the 27th day of September, 2016,

LESLIE RUTLEDGE
Attorney General of Arkansas

MARK BRNOVICH
Attorney General of Arizona

PATRICK MORRISEY
Attorney General of West Virginia

LUTHER STRANGE
Attorney General of Alabama

BRAD SCHIMEL
Attorney General of Wisconsin

SAM OLENS
Attorney General of Georgia

DOUG PETERSON
Attorney General of Nebraska

JEFF LANDRY
Attorney General of Louisiana

ALAN WILSON
Attorney General of South Carolina

SEAN REYES
Attorney General of Utah

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General

ANDREW D. LEONIE
Associate Deputy Attorney General for the Office of Special Litigation
Andrew.Leonie@texasattorneygeneral.gov

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS*
Associate Deputy Attorney General for the Office of Special Litigation
Austin.Nimocks@texasattorneygeneral.gov

MICHAEL TOTH
Senior Counsel for the Office of Special Litigation

Office of Special Litigation
Texas Attorney General's Office
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
Tel: 512-936-1414

*/s/ Peter A. Patterson*
Peter A. Patterson, Ohio Bar No. 0080840
   *Trial Counsel, Bar Member of S.D. Ohio*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ppatterson@cooperkirk.com

*ATTORNEYS FOR AMICI CURIAE*

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

     I, Austin R. Nimocks, hereby certify that on this the 27th day of September, 2016, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

                                             */s/ Austin R. Nimocks*
                                             Austin R. Nimocks*

\* Admitted *pro hac vice*